IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHIRLEY DAVIDSON, Individually and on Behalf of the Class,<br><br>    Plaintiff,<br><br>  v.<br><br>WORLDWIDE ASSET PURCHASING, LLC; WORLDWIDE ASSET PURCHASING II, LLC; and WEST RECEIVABLE SERVICES, INC.,<br><br>    Defendants. | Case No. 12 C 4359<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

  Before the Court is Defendant Worldwide Asset Purchasing II, LLC's (hereinafter, "WAP II") Motion to Dismiss. For the following reasons, the Court grants the Motion.

### I.  BACKGROUND

  Plaintiff Shirley Davidson (hereinafter, "Davidson" or "Plaintiff") is a resident of Illinois. On November 30, 2007, Defendant Worldwide Asset Purchasing, LLC ("WAP I") sued Davidson to collect "an alleged debt incurred for personal, family or household purposes." Am. Compl. 7. On March 10, 2008, WAP I obtained a judgment in Illinois state court against Davidson and then collected on that judgment between June 2008 and July 2008. Subsequently, the judgment was vacated and the case dismissed on July 21, 2008.

Plaintiff alleges WAP I's actions violated the Illinois Collection Agency Act (the "ICAA") because, effective January 1, 2008, the act prohibited an unlicensed collection agency from engaging in debt collection within the state. 225 Ill. Comp. Stat. 425/4. The statute regulates when collection agencies may refer an account to an attorney, which Plaintiff contends makes clear that litigation is considered part of debt collection under the statute. *Id.* at 425/8a-1.

WAP I was not licensed as a collection agency in Illinois until September 4, 2008. (WAP II also became licensed on this date.) Plaintiff contends WAP I thus violated the law by obtaining the judgment and collecting on it while unlicensed.

WAP I is chartered under Nevada law and has its principal office in Nebraska. It is a wholly-owned subsidiary of Defendant West Receivable Services, Inc. ("West"), a Delaware Corporation with its principal place of business in Nebraska. WAP II is also chartered under Nevada law. It is wholly-owned by Galaxy Asset Purchasing, LLC ("GAP"). GAP, in turn, is wholly owned by Galaxy Capital Inc. ("GC").

Plaintiff alleges West "directed the collection activities of both WAP [I] and WAP II while both were unlicensed," (Am. Compl. 3) and that West itself was unlicensed during 2008, when it owned both WAP I and WAP II.

Plaintiff alleges WAP II is ultimately owned by 14 individuals: Steve Sherrill, Richard Lundeberg, Darrell T. Hanna,

Stephanie A. Hanna, Susan Vasiliadis, Kenneth S. Hurt, Joseph Barbito, Deidri McBrayer, Michael LaFleur, James Hanna, Sydney Hanna, Spencer Hanna, Leslie Abstein III and Kelly Hebert.

Darrell Hanna has been an officer of WAP I (the Complaint does not say when), as has Mr. Lundeberg. Plaintiff further alleges that "WAP [I] and WAP II were acting in a common course" of action and that "defendants had common employees and managers directing each defendant's actions as a collection agency [and] defendants used common procedures and practices." Am. Compl. 4. "[D]efendants were, in fact, distinguishable by name only." *Id.*

Finally, Plaintiff alleges "Defendants jointly and cooperatively participated in a common course of conduct – namely, the collection of debts without being properly licensed – contrary to the ICAA, through actions of common employees and managers, and practices equally applicable to each defendant." *Id*. at 7. In her response brief, Plaintiff maintains that this last sentence in the Complaint supports the inference that "all defendants, including WAP II, are co-conspirators, as all of them agreed to conduct that was unlawful and took action towards that conduct." Pl.'s Resp. 4.

In addition to WAP I's litigation against Davidson, WAP I and WAP II (while unlicensed) instituted lawsuits against more than 30 Illinois consumers in 2008. They also collected money from other Illinois consumers.

Plaintiff sues on behalf of a class and a subclass. The class consists of "all individuals against whom defendants [WAP I or WAP

II] obtained a judgment, filed a collection lawsuit, or collected money, in Illinois between January 1, 2008 and September 4, 2008." Am. Compl. 8. The subclass consists of "class members who had judgments or lawsuits filed against them, but do not presently have judgments outstanding." *Id*.

Plaintiff sues under four counts. Count I alleges Defendants' coordinated actions "constitute a public nuisance" as defined by the act. 225 ILL. COMP. STAT. 425/14a. Count II alleges liability for the filing and pursuit of lawsuits during the unlicensed 2008 period. Count III alleges Defendants violated Section 425/9(a)(20) by attempting to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. Count IV seeks restitution of any monies obtained as a result of collection activities while unlicensed in 2008.

## II.  LEGAL STANDARD

To withstand a Motion to Dismiss, a Complaint "must be plausible on its face, meaning that the plaintiff must have pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *G&S Holdings LLC v. Cont'l Cas. Co.*, No. 11-1813, 2012 U.S. App. LEXIS 19728, at *4 (7th Cir. Sept. 20, 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint need not contain detailed factual allegations to meet that standard, but must go

beyond mere labels and conclusions. *G&S Holdings LLC*, 2012 U.S. App. LEXIS 19729, at *4.

## III. ANALYSIS

### A. Consideration of Standing Before Class Certification

WAP I and West answered the Amended Complaint, but WAP II brought a Motion to Dismiss. WAP II argues that Davidson has no Article III standing to sue WAP II because the Complaint acknowledges that WAP I, rather than the separate legal entity of WAP II, sued Davidson.

The requirements of Article III case-or-controversy standing are threefold: (1) an injury in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court. *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010). Because Davidson's injury is traceable to WAP I rather than WAP II, she has no standing to assert the injuries caused by WAP II against the unnamed class members, WAP II argues.

Plaintiff counters this argument with what seems to be three arguments. The first two arguments are fairly clear. The third is more murky.

First, Plaintiff argues that it is improper for the Court to consider the standing argument before Rule 23 class certification has been considered. This argument is grounded in *Amchem Products, Inc., et al. v. Windsor* et al., 521 U.S. 591, 612-613 (1997), and

*Ortiz, et al. v. Fibreboard Corp. et al,* 527 U.S. 815, 831 (1999). In both these cases, the Supreme Court decided whether class certification was proper before considering issues of standing. This was somewhat askance with the previous view that standing was the first inquiry to be made. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (noting that "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *see also, Robinson v. City of Chicago*, 868 F.2d 959, 968 (7th Cir. 1989) ("[A] class will not be certified unless the named plaintiff has standing at that time.").

*Ortiz* and *Amchem* have caused "a great deal of mischief," as one observer put it. *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, No. 09-7666, 2012 U.S. Dist. LEXIS 2501, at *18 (N.D. Ill. Jan. 9, 2012) (citing Linda S. Mullenix, *Standing and Other Dispositive Motions After Amchem and Ortiz: The Problem of "Logically Antecedent" Inquiries*, 2004 MICH. ST. L. REV. 703, 707 (Fall 2004)).

While some courts and observers suggest *Ortiz's* consideration of class status before Article II standing is always appropriate (*e.g., Salsitz v. Peltz*, 210 F.R.D. 95, 97 (S.D.N.Y. 2002), others read the language of *Amchem* and *Ortiz* as mere dicta explaining that, in those two particular cases, the Court chose to expound on

class certification issues rather than standing issues. *Mullenix*, 2004 MICH. ST. L. REV. at 714.

The Seventh Circuit appeared headed toward the former interpretation in *Payton v. County of Kane* when it called *Ortiz*'s language a "directive" to consider class certification before issues of standing. *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). However, the Seventh Circuit appeared to retreat from that language in *Arreola v. Godinez* when it agreed that, at least in that case, "standing is an antecedent legal issue that we must resolve before proceeding to our evaluation of the district court's class certification decision." *Arreloa v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

This Court concedes the field is muddied with reasonable interpretations of *Ortiz* and *Amchem* on both sides, but it endorses Mullenix's view that the cases do not require that class certification issues always be resolved before standing issues are addressed. Moreover, the Court finds the distinction provided by an Indiana case persuasive. *In Catlin v. Hanser*, the Court noted that cases where standing has been raised before class certification motions are made are easily distinguishable from *Payton*. *Catlin v. Hanser*, 2011 U.S. Dist. LEXIS 28323, at *24-25 (S.D. Ind. March 17, 2011). Like *Catlin*, no class certification motion is pending here, and the Court will not defer the issue of Article III standing.

### B. Juridical Link Doctrine

In her second argument, Plaintiff contends that the "Juridical Link" Doctrine is an exception to the standing requirement that applies here. The doctrine posits that "if all the defendants took part in a similar scheme that was sustained either by a contract or a conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the named class representative did not have direct contact." *Payton*, 308 F.3d at 679.

*Payton* involved a suit by arrestees against 19 counties. The named plaintiffs, who had been detained by only two of the defendant counties, alleged that the state statute that allowed the counties to add a bail fee to the bail amount set by the court was unconstitutional. The Seventh Circuit decided that even though the named plaintiffs only had direct interactions with two of the defendants, it might nonetheless be allowable for the class to proceed against all 19 defendants (and possibly, eventually, all 102 counties in Illinois).

Key to the Seventh Circuit's decision was the fact that the case might be in a category "where appropriate relief may only be obtained through one broad suit, and it will be impossible to find a named plaintiff to match each defendant." *Payton*, 308 F.3d at 681. "These putative representatives were personally injured by the operation of the very same statute that caused the injuries to all other members of the proposed class."

Following those guideposts, the Court finds this case unlike *Payton*. Here, while there is an overarching statute involved (ICAA), it does not pave the way to injuring the Plaintiff by unconstitutionally authorizing the actions of Defendants as the offending statute allegedly did in *Payton*. Further, there are not another potential 101 defendants who would be impossible otherwise to reach. As Defendants point out, there is just one other Defendant here (WAP II) that is not reached by this class action. That Defendant may be manageably reached by any number of (currently) unnamed class plaintiffs who were injured by WAP II's lawsuits during the period in question.

Even accepting as true Plaintiff's common course of action and conspiracy allegations (many of which only come in its response brief, not its Complaint) as the court must in a motion to dismiss, they do not equate the class' situation in this case to the class in *Payton*, where logistical considerations prohibited any alternate path to relief.

Absent a more definitive directive from the Seventh Circuit (which has never again taken up the Juridical Link Doctrine in the 10 years since *Payton*), this Court declines to broaden the Juridical Link Doctrine to apply to a circumstance such as this. The Court finds the Juridical Link Doctrine inapplicable in this case.

### C. Civil Conspiracy

Plaintiff's third argument is a bit murky, but seems to contend not that an exception to standing exists, but that it has standing with regards to WAP II because WAP II engaged in civil conspiracy against it with regards to the injury by WAP I. This allegation is murky because Plaintiff never termed this "conspiracy" in her Complaint; it only refers to it as such in her response to WAP II's Motion to Dismiss. It was not clear, at least from the Complaint, if Plaintiff was alleging "conspiracy" as part of a necessary component of the "juridical link" doctrine, or if she was alleging the separate theory of civil conspiracy.

"The elements of an Illinois civil conspiracy are (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the further of which one of the conspirators committed an overt tortious or unlawful act." *Milliman v. McHenry County*, 2012 U.S. Dist. LEXIS 151570, at *9 (N.D. Ill. Oct. 22, 2012) (internal punctuation and quotations omitted, citing *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004).

The "agreement" requirement is what troubles the Court with this Complaint. Here, Plaintiff has alleged that WAP I and WAP II shared a number of employees, officers and a common owner (West). But no explicit agreement is alleged between WAP II and the other two defendants. Plaintiff does allege that "Defendants jointly and cooperatively participated [in] a common course of conduct – namely, the collection of debts without being properly licensed –

contrary to the ICAA, through actions of common employees and managers, and practices equally applicable to each defendant." Am. Compl. 7.

The Court does not think that merely because the companies shared a number of officers and employees, or merely because the two companies engaged in similar business practices, an agreement has been alleged between the two companies.

"The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Lerman v. Turner,* No. 10-2169, 2010 U.S. Dist. LEXIS 117825, at *7-8 (N.D. Ill. Nov. 5, 2010). To allege an actionable conspiracy, the plaintiff must do more than simply allege that a corporate defendant participated in a conspiracy. *Hollinger Int'l v. Hollinger Inc.*, No. 04-0698, 2005 U.S. Dist. LEXIS 21305, at *47 (N.D. Ill. March 11, 2005). Instead the plaintiff must (1) point to evidence showing the existence of a conspiracy and the defendants' knowing participation in that conspiracy and (2) allege specific facts warranting an inference that the defendant was a member of the conspiracy. *Id*.

Additionally, "mere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy." *GMAC, LLC v. Hillquist*, 652 F.Supp.2d 908, 923 (N.D. Ill. 2009).

Although this is a close call, this Court ultimately cannot find that Plaintiff has adequately alleged an agreement between WAP

II and either of the other corporate defendants to engage in illegal conduct.

Indeed, it was not clear until Plaintiff's response brief that civil conspiracy was even being alleged. Even taking the response brief into account, the agreement was never adequately alleged. As the entire point of a complaint is to give a defendant notice of what it stands accused of, this Court finds that Plaintiff failed to adequately allege civil conspiracy to violate the Illinois Collection Agency Act.

### D.  Standing to Sue WAP II

With these decisions reached, the question of whether Davidson has standing to sue WAP II is a foregone conclusion. WAP II is a separate legal entity from WAP I that had no direct interaction with Davidson. Thus, her injury cannot be traced to WAP II. That West allegedly owned both WAP I and WAP II at the time in question does not change this conclusion.

### IV.  CONCLUSION

For the reasons stated herein, the Motion to Dismiss WAP II as a Defendant for lack of a Named Plaintiff with Standing is granted. **IT IS SO ORDERED.**

                              Harry D. Leinenweber, Judge
                              United States District Court

**DATE:** 12/27/2012